IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DANIEL F. RHODES, §
§
Plaintiff, §
§ Civil Action No. 3:05-CV-2343-D
VS. §
§
TIBOR PRINCE, et al., §
§
Defendants. §

MEMORANDUM OPINION
AND ORDER

The individual defendants in this case——Tibor Prince ("Prince"), William Harris ("Harris"), James F. Roach, III ("Roach"), Gary Krohn ("Krohn"), and Jerry D. Carroll ("Carroll")——filed on January 23, 2006 a renewed motion to dismiss under Fed. R. Civ. P. 12(b)(6). They seek dismissal of plaintiff Daniel Rhodes's ("Rhodes's") 42 U.S.C. § 1983 claims based on qualified immunity. The court referred the motion to the magistrate judge for recommendation, and on July 11, 2006 he filed his conclusions and recommendation, in which he recommends that the motion be granted in part and denied in part. On July 24, 2006 defendants filed objections to the conclusions and recommendation of the magistrate judge. The court deferred its ruling pending the outcome of an interlocutory appeal taken from another ruling in this case. That appeal has now been concluded. Accordingly, after making an independent review of the pleadings, files, and records in this case, the conclusions and recommendation of the magistrate judge, and defendants' objections, the court concludes that the

conclusions and recommendation are correct in part and are therefore adopted in part. Defendants' renewed motion to dismiss is therefore granted in part and denied in part.

I

The court will not recount at length the background facts and procedural history because they are set forth in the conclusions and recommendation of the magistrate judge. In sum, the magistrate judge recommends that all of plaintiff's 42 U.S.C. § 1983 claims against the individual defendants be dismissed based on qualified immunity, with the following exceptions: his First Amendment reprimand-based retaliation claim against Krohn should not be dismissed; his First Amendment retaliatory prosecution-based claim should not be dismissed as to any of the individual defendants; and his Fourth Amendment false arrest claim should not be dismissed as to any of the individual defendants. Defendants object to the parts of the conclusions and recommendation that recommend preserving these components of plaintiff's § 1983 action. Rhodes has not filed any objections.

II

The court concludes that the parts of the magistrate judge's conclusions and recommendation to which no objections have been lodged are correct, and they are therefore adopted. Accordingly, the court therefore dismisses based on qualified immunity Rhodes's First Amendment retaliation claim against Prince, Harris, Roach,

and Carroll. The court also dismisses Rhodes's Fifth Amendment and Fourteenth Amendment claims against all five individual defendants.

III

The court now turns to the remaining claims that the magistrate judge recommends should not be dismissed based on qualified immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity likewise applies to state officials sued for constitutional violations under § 1983. *See id* at n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 339, 341 (1986)).

"To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiffs as the parties asserting the injuries, the facts they have alleged show that defendants' conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005)

(Fitzwater, J.) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.")). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "The objective reasonableness of allegedly illegal conduct is assessed in light of the rules clearly established at the time it was taken." *McClendon v. City of Columbia*, 258 F.3d 432, 438 (5th Cir. 2001); *see Wooley v. City of Baton Rouge,* 211 F.3d 913, 919 (5th Cir. 2000). "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo,* 279 F.3d at 284 (quoting *Thompson v.*

*Upshur County, Tex*., 245 F.3d 447, 457 (5th Cir. 2001)).

In a § 1983 case, the plaintiff is not required to anticipate the defense of qualified immunity and "provide greater specificity" in his complaint. *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995) (per curiam) (citing *Shultea v. Wood*, 47 F.3d 1427, 1430, 1433-34 (5th Cir. 1995) (en banc)). The plaintiff is obligated initially to "file a short and plain statement of [his] claim pursuant to rule 8(a)(2)[.]" *Id.* When, as here, defendants raise the affirmative defense of qualified immunity and the court requires that the plaintiff file a Rule 7(a) reply, the plaintiff becomes obligated to augment his complaint with "a more particularized reply pursuant to rule 7[.]" *Id.*; *see Shultea*, 47 F.3d at 1433. "[W]hen a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Shultea*, 47 F.3d at 1433). "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Shultea*, 47 F.3d at 1433. "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff['s] injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999) (citing *Wicks v. Miss. State Employment Servs.*, 41 F.3d 991, 995 (5th Cir. 1995)). The case should not be allowed to proceed unless plaintiffs can assert specific facts that, if true, would overcome the defense. *See*

*Morin*, 77 F.3d at 120; *Shultea*, 47 F.3d at 1434. "*Shultea* says that a plaintiff must first 'support [ ] his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts.'" *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996) (quoting *Shultea*, 47 F.3d at 1434).

IV

The magistrate judge recommends that the court not dismiss Rhodes's First Amendment retaliation claim against Krohn based on his decision to reprimand Rhodes.

A

The court considers initially whether Rhodes has alleged sufficient facts to establish a First Amendment violation. That question turns on whether Rhodes has adequately pleaded that Krohn committed a retaliatory act that qualifies as an adverse employment action. In his Rule 7(a) reply, Rhodes alleges that "Krohn subjected Rhodes [and two others] to increased counseling statements, reprimands, denials of vacation time . . . ." P. Rule 7(a) Reply 2. Rhodes neither explains what these "reprimands" consisted of, nor does he allege facts from which the court can deduce when and in response to what allegedly protected speech the reprimands occurred. The magistrate judge concluded that Rhodes's allegation that Krohn reprimanded him is sufficient to establish an adverse employment action supporting a First Amendment retaliation

claim. The magistrate judge assumes that this "reprimand" was a "formal reprimand" and that it therefore qualifies as an adverse employment action. Krohn objects to these conclusions.

The court holds that Rhodes has failed in his Rule 7(a) reply to plead the facts of the alleged "reprimands" with sufficient precision and factual specificity to overcome the defense of qualified immunity. To qualify as an adverse employment action that supports a First Amendment retaliation claim, the act taken must alter an important condition of employment, result in the denial of an employment benefit, or have a negative consequence on the plaintiff's employment. *See Breaux v. City of Garland*, 205 F.3d 150, 159 & n.16 (5th Cir. 2000). "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Pierce v. Tex. Dep't of Criminal Justice, Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994). But the "reprimand" must qualify as a formal reprimand, not simply mere criticism. *Colson v. Grohman*, 174 F.3d 498, 512 n.7 (5th Cir. 1999) ("[F]ormal reprimands given in retaliation for the exercise of First Amendment rights are actionable but less formal criticisms and accusations are not."); *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997) ("[M]ere criticisms do not give rise to a constitutional deprivation for purposes of the First Amendment.").

Thus in *Scott v. Flowers*, when the Texas Commission on Judicial Conduct issued a formal public reprimand in response to a

letter the plaintiff wrote and circulated to the press, this constituted an adverse employment action sufficient for a First Amendment retaliation claim. *Scott v. Flowers*, 910 F.2d 201, 204 (5th Cir. 1990). The reprimand chided the plaintiff for being insensitive and noted that this insensitivity was "inconsistent with the proper performance of [his] duties as justice of the peace" and served only to "cast public discredit upon the judiciary." *Id.* The Commission then "concluded the reprimand with a warning, advising Scott to be 'more restrained and temperate in written and oral communications in the future.'" *Id.* In contrast, an evaluation of a law professor's participation as being "counterproductive" was merely a criticism and did not constitute an adverse employment action. *Harrington*, 118 F.3d at 365-66. Thus for a reprimand to rise to the level of an adverse employment action, it must at least be more than "mere criticism." *Id.* at 366.

To defeat qualified immunity, Rhodes must plead facts in his Rule 7(a) reply that are sufficient to overcome the defense. *E.g., Morin*, 77 F.3d at 120; *Shultea*, 47 F.3d at 1434. Here, Rhodes has not satisfied this heightened pleading requirement. He has not supported the claim with sufficient precision and factual specificity to permit the conclusion that he was subjected to "reprimands" that were adverse employment actions. He has alleged no facts from which the court can conclude that the "reprimands"

rose to the magnitude of formal reprimands as opposed to mere acts of criticism.

B

Moreover, even if the court were able to conclude that Rhodes has adequately pleaded that the reprimands were adverse employment actions, Rhodes would still not defeat Krohn's entitlement to qualified immunity. This is because Rhodes has not sufficiently pleaded that he was reprimanded for speaking on a matter of public concern.

To prove a First Amendment retaliation claim, Rhodes must establish that the adverse employment action was "motivated by [his] protected speech." *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 341 (5th Cir. 2003) (citing *Harris v. Victoria Indep. Sch. Dist*., 168 F.3d 216, 220 (5th Cir. 1999)). Rhodes has not alleged specific facts that show what speech prompted Krohn to reprimand him or when in the chain of alleged events the reprimand occurred. This deficiency is fatal to Rhodes's claim because, without specifying these details, Rhodes has failed to plead facts that would establish that Krohn acted in response to Rhodes's exercise of his First Amendment rights. *See Ellis*, 2005 WL 525406, at *6. If the reprimand was in retaliation for Rhodes's survey responses rather than for his report of police misconduct, the reprimand would not be in response to protected speech, because the survey response involved merely an employment grievance, not a matter of

public concern. *See Connick v. Myers*, 461 U.S. 138, 147 (1983); *Wyman v. City of Dallas*, 2004 WL 2100257, at *5 (N.D. Tex. Sept. 21, 2004) (Fitzwater, J.).

The court therefore declines to adopt the magistrate judge's recommendation concerning Rhodes's First Amendment retaliation claim against Krohn, and it dismisses this claim against all five individual defendants.

V

A

Defendants object to the magistrate judge's conclusion that Rhodes's speech was constitutionally protected and therefore met the "protected speech" elements of the First Amendment retaliation claim as well as the First Amendment retaliatory prosecution claim. Relying on the Supreme Court's decision in *Garcetti v. Ceballos*, ___ U.S. ___, 126 S. Ct. 1951 (2006), defendants argue that Rhodes has failed to plead facts that show that his speech was protected under the First Amendment, because he was acting as an employee in making his complaints rather than as a citizen engaged in public discourse. They also posit that Rhodes's entitlement to First Amendment protection resulting from his internal complaints was at best ambiguous. Because the court has concluded that Rhodes's First Amendment retaliation claim fails on other grounds as to all individual defendants, it will consider this argument only as it

relates to Rhodes's First Amendment retaliatory prosecution claim.[*]

B

In his Rule 7(a) reply, Rhodes alleges several instances of speech that he says served as motivating factors for defendants' retaliatory prosecution of him and that deserve First Amendment protection. The magistrate judge concluded that Rhodes's complaint about safety issues in the Crime Scene Unit was speech that addressed a personal matter and was not protected under the First Amendment. The court agrees and adopts this conclusion.

Rhodes alleges that he twice notified his superiors that a coworker had lost, misplaced, or stolen evidence. This is the only speech the court can identify from his Rule 7(a) reply that may be entitled to First Amendment protection. Rhodes alleges that his superiors took no action in response to his reports and that Krohn was conducting private business while on government time, but these statements contain no allegations of speech. Thus the court's analysis of Rhodes's protected speech will be limited to the two

[*]Defendants do not object to the magistrate judge's conclusions on an individual defendant basis. Instead, they argue more generally that Rhodes cannot recover on his First Amendment retaliatory prosecution claim because none of his speech was protected under the First Amendment and that even if the speech was protected, Rhodes's entitlement to protection was at best ambiguous. *See* Ds. Objs. 10. To reject these arguments, the court need only conclude that Rhodes's Rule 7(a) reply sufficiently pleads that he engaged in protected speech and hold that the law was clearly established at the time in question. The court need not analyze whether one or more particular defendants would still be entitled to qualified immunity, because defendants have not preserved an objection on this basis.

statements he made to his superiors regarding the lost, misplaced, or stolen evidence.

Defendants argue that under *Garcetti*, Rhodes's speech is not entitled to First Amendment protection because it was made as an employee, not as a citizen. In *Garcetti* the Supreme Court addressed the question whether a deputy district attorney's memorandum regarding a pending prosecution was entitled to First Amendment protection. *Garcetti*, 126 S. Ct. at 1955-56. The plaintiff, Ceballos, was a calendar deputy district attorney who was asked by a defense attorney to review for inaccuracies an affidavit filed in a pending case. *Id.* at 1955. This was not unusual because defense attorneys often asked calendar deputies to investigate aspects of pending cases. *Id.* Ceballos reviewed the affidavit and discovered that it contained serious misrepresentations. *Id.* He relayed his findings to his supervisors and followed up by preparing a disposition memorandum explaining his concerns and recommending dismissal of the case. *Id.* at 1955-56. The case ultimately was not dismissed, and Ceballos filed suit alleging that he was subjected to a series of retaliatory employment actions, in violation of the First Amendment. *Id.* at 1956. The Supreme Court held that the speech was not protected by the First Amendment because Ceballos's "expressions were made pursuant to his duties as a calendar deputy." *Id.* at 1959-60. The Court reasoned that "the fact that

Ceballos spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case [ ] distinguishes Ceballos' case from those in which the First Amendment provides protection against discipline." *Id.* at 1960. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.*

*Garcetti* does not affect the conclusion that Rhodes's complaints about coworker misconduct were matters of public concern and thus deserving of First Amendment protection. In *Garcetti* the plaintiff's job required that he occasionally issue opinions about pending criminal cases. The Court explained that

> Ceballos did not act as a citizen when he went about conducting his daily professional activities, such as supervising attorneys, investigating charges, and preparing filings. In the same way he did not speak as a citizen by writing a memo that addressed the proper disposition of a pending criminal case.

*Id.* Here, reporting police misconduct was not part of Rhodes's daily professional activities. *Id.* Rhodes was employed by the City of Arlington as a Crime Scene Investigator. Reporting coworker misconduct was not one of the requirements of this position. Thus while the plaintiff in *Garcetti* had a professional duty to issue the opinion that eventually gave rise to the suit, Rhodes was not required as part of his job to supervise,

investigate, and report incidents of mishandling evidence. Rather, he went beyond the bounds of his job duties and voluntarily reported the information that his coworkers had mishandled evidence, and, in doing so, he reported matters that, if released publicly, would inform the public of more than the fact of an employment grievance. *See Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 372 (5th Cir. 2000) ("If releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature.").

In *Connick* the Supreme Court stated that

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick*, 461 U.S. at 147. Accepting the truth of the allegations of Rhodes's Rule 7(a) reply, he was not reporting a matter of personal interest. He reported alleged police misconduct as a citizen, not as an employee. Accordingly, the court adopts the magistrate judge's conclusions and recommendation that Rhodes's reports that his coworkers had mishandled evidence were matters of public concern that are entitled to First Amendment protection.

C

Defendants posit that even if Rhodes's speech was protected, his entitlement to protection was at best ambiguous. The court disagrees and concludes that the law was clearly established at the time of defendants' alleged conduct that it was unconstitutional to prosecute Rhodes for engaging in protected speech of the type at issue in this case.

The Fifth Circuit stated in 2000, well before the speech at issue in this case was made [in 2002], that "[i]f releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature." *Kennedy*, 224 F.3d at 372 (citing *Thompson v. City of Starkville, Miss*. 901 F.2d 456, 463 n.5 (5th Cir. 1990)); *Connick*, 461 U.S. at 147. The court uses this same standard today, and defendants have not pointed to any case decided before their allegedly retaliatory prosecution of Rhodes that suggests a different standard. The law was well settled that it would violate the First Amendment for an employer to prosecute its employee in retaliation for speech that the employee made on a public, and therefore protected, matter. *See United States v. Mauricio*, 685 F.2d 143, 147 (5th Cir. 1982) (holding that retaliatory prosecution is prohibited "where prosecutors have retaliated against specially protected actions by defendants, such as the exercise of first amendment rights."). Defendants' reliance on *Garcetti* does not affect the court's analysis because, for the

reasons the court explains above, it does render unclear the clearly established law that applied to an employee who was speaking as a citizen on a matter of public concern rather than as an employee pursuant to the duties of his employment.

The court therefore denies defendants' motion to dismiss to the extent addressed to this component of Rhodes's § 1983 claim.

VI

Defendants object to the magistrate judge's conclusions and recommendation concerning Rhodes's Fourth Amendment false arrest claim, contending there was no violation because Rhodes was not subjected to a seizure.

Rhodes was an Arlington Police Department employee on administrative leave at the time he was interviewed and fingerprinted. The interview took place at the police station with Rhodes's attorney present. Defendants maintain that there are no allegations that Roach used physical force to detain Rhodes or that Roach physically threatened to restrain him. They argue that, under these facts, there has been no Fourth Amendment seizure and they cannot have violated Rhodes's Fourth Amendment right to be free from unlawful search and seizure.

The magistrate judge concluded that because Rhodes alleged in his Rule 7(a) reply that he was arrested and interrogated, fingerprinted, and palm-printed without his consent, it could either be inferred that he was formally arrested or that his

detention amounted to an arrest, thus triggering Fourth Amendment protections. The court disagrees.

"A seizure of a person within the meaning of the Fourth and Fourteenth Amendments occurs when, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Kaupp v. Texas*, 538 U.S. 626, 629 (2003) (per curiam) (internal quotation marks and citations omitted). Although this is the general standard used to determine whether a seizure has occurred, the application of the Fourth Amendment in unique settings, such as here where the police who allegedly "seized" Rhodes are also Rhodes's employers, can present difficult issues. "On the one hand, public servants 'are not relegated to a watered-down version of constitutional rights.'" *Reyes v. Maschmeier*, 446 F.3d 1199, 1202 (11th Cir. 2006) (citing *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967)). "On the other hand, 'nothing in the Fourth Amendment endows public employees with greater workplace rights than those enjoyed by their counterparts in the private sector.'" *Id.* at 1202-03 (citing *Driebel v. City of Milwaukee*, 298 F.3d 622, 637 (7th Cir. 2002)).

The Supreme Court has addressed the question of seizures in the workplace generally, stating that "when people are at work their freedom to move about has been meaningfully restricted, not

by the actions of law enforcement officials, but by the workers' voluntary obligations to their employers." *INS v. Delgado*, 466 U.S. 210, 218 (1984). "This principle is no less applicable in the public employment context." *Aguilera v. Baca*, 394 F.Supp.2d 1203, 1214 (C.D. Cal. 2005). Thus "in cases involving the constitutional rights of police officers, courts must distinguish between a police department's actions in its capacity as an employer and its actions as the law enforcement arm of the state." *Driebel*, 298 F.3d at 637. Based on this rule, the Sixth Circuit recently concluded that "a claim that a government supervisor has seized a public employee in violation of the Fourth Amendment must allege circumstances that implicate more than the obligations that arise from the employment relationship." *Reyes*, 446 F.3d at 1204.

In this case, Rhodes does not allege that he was physically restrained or threatened. He does not assert that his interviewers made any show of authority. Although Rhodes maintains that Roach advised him that "he was conducting a criminal investigation of the burglary," Rhodes does not contend that in being interviewed he was being questioned as a possible criminal suspect. Rhodes asserts that he was the subject of an "internal affairs investigation on his alleged criminal activity." P. Rule 7(a) Reply 8. The Rule 7(a) reply does not support the conclusion that when Rhodes was called to the police station, he was being investigated pursuant to *criminal* charges rather than as an employee on administrative

leave, undergoing an internal investigation of possible misbehavior for purposes of his continued employment.

Rhodes maintains that "before a criminal interrogation at Eastside Police Station, [he] was finger printed and palm printed." *Id.* He further alleges that he "never consented to any body search, nor to any fingerprinting on [the date of his interrogation]." *Id.* at 9. But even drawing all inferences in favor of Rhodes, the court cannot conclude that the fact that he was fingerprinted without giving consent would permit the finding that Rhodes was subjected to a seizure as that term is understood in the context of the Fourth Amendment. Although Rhodes alleges that he did not *consent* to the fingerprinting, he does not assert that he did not feel free to leave or to refuse to submit to fingerprinting. While he may have risked losing his job by not complying with the requests of the officer conducting the internal affairs investigation, Rhodes does not allege that he feared a possible criminal arrest or detention for failing to comply. He has therefore failed to plead facts that support the conclusion that a reasonable person in Rhodes's position would not have felt free to refuse to come to the police station in the first place or to leave the police station once questioning began. He has also failed to plead facts that permit the conclusion that a reasonable person in Rhodes's position would not have felt free to refuse to submit to fingerprinting. Rhodes has not pleaded facts that permit

the conclusion that he was subjected to a seizure. Consequently, his Fourth Amendment-based § 1983 claim against the individual defendants must be dismissed.

* * *

Accordingly, the court adopts in part the conclusions and recommendation of the magistrate judge. Defendants' January 23, 2006 renewed motion to dismiss is granted in part and denied in part. Rhodes's § 1983 claims against the individual defendants——except his First Amendment retaliatory prosecution-based claim——are dismissed.

**SO ORDERED.**

February 8, 2007.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE