IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DANIEL F. RHODES,             §
                              §
              Plaintiff,      §
                              § Civil Action No. 3:05-CV-2343-D
VS.                           §
                              §
TIBOR PRINCE, et al.,         §
                              §
              Defendants.     §

MEMORANDUM OPINION
AND ORDER

Defendant City of Arlington ("the City") moves for summary judgment dismissing the claims of plaintiff Daniel F. Rhodes ("Rhodes") brought under the Texas Tort Claims Act ("TTCA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (Vernon 2005), and the Texas Declaratory Judgments Act ("TDJA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (Vernon 2008). For the following reasons, the court grants the motion as to Rhodes's declaratory judgment claim and denies the motion as to his TTCA claim.

I

Because this case is the subject of several prior opinions of this court and of the Fifth Circuit, the background facts and procedural history need not be recounted at length. Rhodes is a Crime Scene Investigator employed by the Arlington Police Department ("APD") and assigned to the Investigative Services Bureau ("ISB").[1]   His job duties include teaching classes

---

[1]In recounting the factual background, the court summarizes the evidence in the light most favorable to Rhodes as the summary

instructing new officers on crime scene investigation techniques, including fingerprinting techniques.  Defendant Tibor Prince ("Prince")[2] participated in one of these classes.  As a part of the class, Prince lifted Rhodes's fingerprints from a coffee bottle and mounted them on a 3x5 index card.  Instead of turning in or destroying the fingerprint card, Prince placed it in his fingerprint case.

Subsequently, APD officers, including Prince, investigated a burglary at an apartment complex.  Prince, under the supervision of defendant William Harris ("Harris"), obtained several sets of fingerprints from one of the apartments and placed the fingerprint cards in his fingerprint case.  Prince in turn deposited the fingerprint cards into an APD evidence drop box.  An investigator in the Crime Scene Unit later identified the fingerprints on one of the cards——i.e., apparently from the apartment complex crime scene——as belonging to Rhodes.

Defendant Sergeant Gary Krohn ("Krohn") confronted Rhodes and told him to attend a meeting with defendants Lieutenant Jerry D.

---

judgment nonmovant and draws all reasonable inferences in his favor.  *E.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]As the court notes below, all defendants except the City have been dismissed from the case.

Carroll ("Carroll") and Sergeant James F. Roach, III ("Roach").[3] During the meeting, Roach and Carroll accused Rhodes of the burglary and advised him that a criminal investigation was pending against him.  Carroll initiated an internal affairs misconduct investigation against Rhodes, who was placed on paid administrative leave.  Rhodes was questioned and fingerprinted, but Roach informed Rhodes that he did not believe that Rhodes had committed the burglary.  Later, two APD Assistant Chiefs of Police indicated to Rhodes that Krohn and Roach had stated that the fingerprints Prince said he obtained from the apartment could not have been found there.  The internal affairs investigation eventually determined that Prince did not obtain Rhodes's fingerprints from the scene of the burglary but instead obtained them during the fingerprinting class taught by Rhodes.  Rhodes was permitted to return to work.

Rhodes sued Prince, Harris, Roach, Krohn, and Carroll (collectively, the "Individual Defendants"), alleging that they had intentionally retaliated against him for speaking out about alleged illegal conduct by his superiors.  All of the claims against the Individual Defendants have been dismissed.  *See Rhodes v. Prince*, 2008 WL 2416256, at *4 (N.D. Tex. June 11) (Fitzwater, C.J.), *appeal docketed*, No. 08-10794 (5th Cir. Aug. 14, 2008). Additionally, Rhodes asserted TTCA and declaratory judgment claims

---

[3]Rhodes and other ISB employees had previously complained about alleged misconduct and illegal behavior by their superiors, including Krohn.

against the City.  He seeks to hold the City liable under the TTCA for actions committed by the Individual Defendants that were due to mistake, carelessness, inadvertence, and/or negligence.  Rhodes avers that his damages were caused by the misuse of tangible property: the fingerprint card containing his fingerprints.  He seeks a declaratory judgment, attorney's fees, economic damages, damages for medical bills, damages for physical pain and emotional distress, and pre- and post-judgment interest.

The court has previously denied two motions seeking dismissal of Rhodes's claims against the City.  The court denied the City's motion to dismiss under Rule 12(b)(6) based on sovereign immunity. *Rhodes v. Prince*, No. 3:05-CV-2343-D (N.D. Tex. Apr. 11) (Stickney, J.), *rec. adopted*, No. 3:05-CV-2343-D (N.D. Tex. Apr. 26, 2006) (Fitzwater, J.) (order) ("*Rhodes I*"), *aff'd*, 215 Fed. Appx. 329 (5th Cir. 2007) (per curiam).  The City had argued that Rhodes's claims were barred by the TTCA because he did not allege injury by use of tangible personal or real property.  The court disagreed, holding that "plaintiff's first amended complaint asserts that 'the harm to him . . . was the result, at least in part, of the use of tangible personal property, and specifically, the misuse of fingerprint cards by the individual named Defendants.'" *Rhodes I*, No. 3:05-CV-2343-D, slip op. at 1 (citation omitted) (ellipsis in original).  The court later denied the City's Rule 12(c) motion for judgment on the pleadings, holding that the exclusivity provision

of the Texas Workers' Compensation Act did not bar Rhodes's claims. *Rhodes v. Prince*, 2007 WL 2962796, at *4-*5 (N.D. Tex. Oct. 11, 2007) (Fitzwater, J.) ("*Rhodes II*").   The court declined in both opinions to dismiss based on the pleadings alone Rhodes's declaratory judgment claim.   But in *Rhodes II* it stated that it was denying dismissal "without suggesting that declaratory relief is available to Rhodes in this context or that the court in its discretion will later decide to entertain such a claim for the type of relief requested[.]"   *Id.* at *5.

The City now moves for summary judgment on Rhodes's claims against it.   It contends for three reasons that Rhodes's TTCA claim does not fall within the statute's waiver of sovereign immunity: first, Rhodes has not shown that the City used tangible personal property to inflict his injuries; second, Rhodes has not shown proximate causation between his injuries and the use of tangible personal property; and third, Rhodes has not presented evidence that he was injured by a negligent act rather than by intentional acts.   The City also renews its challenge to Rhodes's request for a declaratory judgment, contending that Rhodes has no authority to demand the requested relief and that the City's compliance with the demands would in fact be contrary to state law.   Rhodes opposes the City's motion.

- 5 -

II

Because the City will not have the burden of proof on Rhodes's claims at trial, it can meet its summary judgment obligation by pointing the court to the absence of evidence to support the claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the City does so, Rhodes must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Rhodes's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Rhodes's failure to produce proof as to any essential element renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if Rhodes fails to meet this burden. *Little*, 37 F.3d at 1076.

III

A

In Texas, sovereign immunity generally defeats a court's subject matter jurisdiction over a suit against the State unless the Texas Legislature has waived immunity. *See Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). "Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including counties, cities, and school

districts." *Id.* (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)).  The TTCA provides a limited waiver of governmental immunity, making a governmental unit in the state liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2).

Under the TTCA, a government may be liable for an employee's negligence when the employee is acting in the scope of his employment. *See DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex. 1995).  For the waiver of § 101.021(2) to apply, the plaintiff's personal injuries must be proximately caused by the employee's use or misuse of the tangible personal property. *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998).  The property need not be the instrumentality of the alleged harm or have physically inflicted the harm, but its use must have proximately caused the harm. *See Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 32 (Tex. 1983).  "[T]angible personal property refers to something that has a corporeal, concrete, and palpable existence." *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 178 (Tex. 1994).  The use or misuse of information, including information recorded in writing, does not fall within the TTCA's waiver of immunity because information, which lacks

corporeal or palpable qualities, is not tangible property. *See id.* at 179. The TTCA also excludes intentional torts from its waiver of immunity. *See* § 101.057(2) ("This chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort[.]").

B

The court has already held that Rhodes has stated a claim that falls within the TTCA's waiver of governmental immunity. *See Rhodes I*, No. 3:05-CV-2343-D, slip op. at 1-2. The court now holds that, based on the evidence Rhodes has proffered, a reasonable jury could find that Rhodes's claim against the City falls within the TTCA's waiver.[4] Without considering the actions of the other Individual Defendants, the court holds that there is evidence concerning Prince's actions that could bring Rhodes's claim against the City within the TTCA's waiver of immunity. A reasonable jury could find that Prince negligently handled the fingerprint card containing Rhodes's fingerprints, and that Prince's negligent use of the fingerprint card proximately caused Rhodes's injuries. The City's arguments to the contrary are unavailing.

---

[4]When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact. *See, e.g., Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.).

- 8 -

C

The City contends first that Rhodes's injuries were not caused by the use of tangible personal property but were instead caused solely by the use of information derived from tangible personal property, i.e., from the fingerprint card. Rhodes maintains that it was Prince's negligent handling of the physical fingerprint card, not any misuse of the information derived from the card, that caused his injuries. The summary judgment evidence would permit a reasonable jury to find in Rhodes's favor. A reasonable jury could find that Prince did not misuse or misinterpret information derived from the card. The jury could reasonably conclude that it was Prince's negligent handling of the card——his failing to destroy it, commingling it with the fingerprint cards obtained at the burglary scene, and submitting it with evidence of the burglary——that caused Rhodes's injuries. If proved at trial, Prince's alleged mishandling of the fingerprint card could constitute misuse of tangible personal property.

D

The City also contends that the use of the fingerprint card did not proximately cause Rhodes's injuries. Its argument appears to be twofold. First, it implies that the tangible personal property is required to physically cause Rhodes's injuries. This is not the law, however, because the property need not physically inflict the harm; it is only required that its use proximately

cause the harm.  *See Salcedo*, 659 S.W.2d at 32.  Proximate causation demands more than a simple involvement of property, *see Bossley*, 968 S.W.2d at 343, but in this case the fingerprint card is more than merely involved in Prince's conduct and Rhodes's resulting injuries.  Rhodes's injuries would not have occurred absent Prince's negligent handling of the card.  And a reasonable jury could find that Rhodes's injuries were a foreseeable result of Prince's misuse of the card.

Second, the City argues that Rhodes has not proffered evidence that his high blood pressure and Crohn's disease were proximately caused by the misuse of the fingerprint card.  The court need not now decide whether Rhodes can recover for these specific injuries, however, because Rhodes also seeks recovery for several other injuries, including lack of overtime pay and pay for missed teaching assignments, inability to sleep, weight loss, nausea, diarrhea, and mental anguish.  A reasonable jury could find that Prince's misuse of the fingerprint card proximately caused Rhodes to suffer at least *some* personal injury.[5]

---

[5]The court does not suggest that Rhodes can recover for all of the alleged injuries for which he seeks compensation.  It is sufficient at the summary judgment stage, however, to conclude that he has provided competent evidence of *some* recoverable personal injury that could have been proximately caused by the misuse of the fingerprint card.

In its reply brief, the City argues in passing that Texas does not recognize a duty to avoid negligently inflicting the injuries Rhodes alleges.  It is possible that Rhodes will not be able to prove that Prince breached a duty that he owed to Rhodes.  But because the City raised this argument for the first time in its

E

The City argues third that the TTCA's exclusion of intentional torts from the waiver of immunity also bars Rhodes's claim.  It argues that Rhodes was not injured by a negligent act, but instead by the intentional act of placing him on administrative leave. Rhodes does not base his claim on the act of placing him administrative leave, however, but instead on the negligent handling of the fingerprint card.  His placement on administrative leave may have contributed to or "caused" his injuries, but this does not mean that the misuse of the fingerprint card was not also a proximate cause of his injuries.  Under Rhodes's theory of the case, he would not have been placed on administrative leave but for the misuse of the fingerprint card.  Although Rhodes alleges in his complaint, and continues to maintain, that the Individual Defendants acted intentionally in order to frame him, he alleges in the alternative that, if the actions of the Individual Defendants are found to be negligent, the City is liable under the TTCA. Because Rhodes's claims against the Individual Defendants have been dismissed, his claim against the City is all that remains.  Despite Rhodes's allegations that Prince intentionally submitted his

reply brief (and even then only in passing), the court will not consider granting summary judgment on this basis.  *See, e.g., Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.) (holding that court will not consider argument raised for first time in reply brief).

fingerprint card in order to frame him——an assertion that may cause a jury to doubt his alternate negligence claim——a reasonable jury could find that Prince did not act intentionally and that he negligently submitted the card.   A critical piece of the evidence that could support a negligence finding is Prince's own averment that he mistakenly submitted the fingerprint card with the evidence from the burglary.   Because a reasonable jury could find that Prince's act was negligent and that it proximately caused Rhodes's injuries, Rhodes's claim against the City could fall within the TTCA's waiver of governmental immunity.   Accordingly, the City's motion for summary judgment is denied as to this claim.

IV

The City also seeks summary judgment dismissing Rhodes's declaratory judgment claim brought under the TDJA.

A

Rhodes seeks a declaration that all the records of his alleged arrest, detention, criminal prosecution, and internal affairs investigation be expunged from the City's records and be delivered to him.   The City contends that the TDJA is inapplicable because Rhodes has no right to the requested relief and its compliance with the request would violate state law.

- 12 -

B

As a preliminary matter, "[t]he Texas Declaratory Judgments Act does not apply in this court." *Xtria LLC v. Tracking Sys., Inc.*, 2007 WL 1791252, at *2 & n.2 (N.D. Tex. June 21, 2007)(Fitzwater, J.), *appeal docketed*, No. 08-11123 (5th Cir. Nov. 26, 2008). The court therefore considers Rhodes's claim under the federal Declaratory Judgment Act. *Id.* (The TDJA "claim is necessarily brought under the federal Declaratory Judgment Act.").

The federal Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Federal courts have broad discretion to grant or refuse declaratory judgment. *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Declaratory Judgment Act is "an authorization, not a command." *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). It gives federal courts the competence to declare rights, but it does not impose a duty to do so. *Id.*

- 13 -

In the present case, Rhodes asks the court to declare that
certain records be expunged from the City's files and delivered to
him.  As the City points out, Rhodes has not alleged or explained
why he is entitled to this relief.  He has pointed to no authority
that would give him a right to the City's records.  Because Rhodes
has provided no basis for the declaration he seeks, the court, in
its discretion, declines to entertain such a request for relief
under the Declaratory Judgment Act.

Moreover, a declaratory judgment action is merely a vehicle
that allows a party to obtain an "early adjudication of an actual
controversy." *Collin County, Tex. v. Homeowners Ass'n for Values
Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990); *see
also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72
(1950) ("The Declaratory Judgment Act allowed relief to be given by
way of recognizing the plaintiff's right even though no immediate
enforcement of it was asked.").  This, in turn, "helps the parties
avoid damages that might otherwise accrue." *Collin County*, 915
F.2d at 172.  Rhodes is not attempting by his declaratory judgment
action to help the parties avoid damages that might otherwise
accrue.  He is essentially seeking a remedy for a past alleged
wrong: the remedy of expungement under the rubric of a declaratory
judgment action.  The court declines in its discretion to consider
entering such a declaratory judgment.

- 14 -

V

In its reply brief, the City objects to portions of Rhodes's declaration filed in support of his response brief.  Because the court has either granted summary judgment in favor of the City notwithstanding the evidence to which objection has been made, or because it has denied summary judgment and has not relied on the objected-to evidence in doing so, the court overrules the City's objections as moot.

*     *     *

For the foregoing reasons, the court grants in part and denies in part the City's January 30, 2009 motion for summary judgment. The court grants the motion as to Rhodes's declaratory judgment claim, and it denies the motion as to Rhodes's TTCA claim.

**SO ORDERED.**

July 1, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

– 15 –