IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DANIEL F. RHODES,                §
                                 §
                   Plaintiff,    §
                                 §   Civil Action No. 3:05-CV-2343-D
VS.                              §
                                 §
TIBOR PRINCE, et al.,            §
                                 §
                   Defendants.   §

MEMORANDUM OPINION
AND ORDER

    In this case filed originally under the court's federal
question jurisdiction, defendant's motion to dismiss requires the
court to decide whether to exercise supplemental jurisdiction under
28 U.S.C. § 1367(c)(3) over plaintiff's remaining claim under the
Texas Tort Claims Act ("TTCA"), Tex. Civ. Prac. & Rem. Code Ann.
§§ 101.001-.109 (Vernon 2005).  For the reasons that follow, the
court declines to exercise supplemental jurisdiction and dismisses
the claim without prejudice.

I

    Because this case is the subject of several prior opinions of
this court and of the Fifth Circuit,[1] and considering the question
presented, the court need not recount the background facts and
procedural history at length.  Plaintiff Daniel F. Rhodes

_____

    [1]*Rhodes v. City of Arlington*, 2010 WL 2008450 (5th Cir. May
20, 2010) (per curiam); *Rhodes v. Prince*, 360 Fed. Appx. 555 (5th
Cir. 2010) (per curiam); *Rhodes v. Prince*, 273 Fed. Appx. 328 (5th
Cir. 2008) (per curiam); *Rhodes v. Prince*, 215 Fed. Appx. 329 (5th
Cir. 2007) (per curiam).

("Rhodes") was employed by defendant City of Arlington ("the City") as a Crime Scene Investigator in the City's Police Department ("APD").[2] His job duties included teaching classes and instructing new officers on crime scene investigation techniques, including fingerprinting techniques. Tibor Prince ("Prince")[3] participated in one of these classes. As a part of the class, Prince lifted Rhodes's fingerprints from a coffee bottle and mounted them on an index card. Instead of turning in or destroying the fingerprint card, Prince placed it in his fingerprint case.

Subsequently, APD officers, including Prince, investigated a burglary at an apartment complex. Prince, under the supervision of William Harris ("Harris"), obtained several sets of fingerprints from one of the apartments and placed the fingerprint cards in his fingerprint case. Prince in turn deposited the fingerprint cards into an APD evidence drop box. An investigator in the Crime Scene Unit later identified the fingerprints on one of the cards——i.e., apparently from the apartment complex crime scene——as belonging to Rhodes.

Sergeant Gary Krohn ("Krohn") confronted Rhodes and told him to attend a meeting with Lieutenant Jerry D. Carroll ("Carroll")

---

[2]For purposes of deciding this motion, the court will view favorably to Rhodes the factual allegations on which he relies to establish the merits of his case.

[3]Prince and the other individual defendants have been dismissed from the case. The court will not identify them further as former defendants.

and Sergeant James F. Roach, III ("Roach").  During the meeting, Roach and Carroll accused Rhodes of the burglary and advised him that a criminal investigation was pending against him.  Carroll initiated an internal affairs misconduct investigation against Rhodes, who was placed on paid administrative leave.  Rhodes was questioned and fingerprinted, but Roach informed Rhodes that he did not believe that Rhodes had committed the burglary.  Later, two APD Assistant Chiefs of Police indicated to Rhodes that Krohn and Roach had stated that the fingerprints Prince said he obtained from the apartment could not have been found there.  The internal affairs investigation eventually determined that Prince did not obtain Rhodes's fingerprints from the scene of the burglary but instead obtained them during the fingerprinting class taught by Rhodes.

Rhodes sued the City, Prince, Harris, Roach, Krohn, and Carroll.  Following decisions of the Fifth Circuit and of this court, the only cause of action that remains is Rhodes's claim against the City under the TTCA.  Rhodes avers that his damages were caused by the misuse of tangible property: the fingerprint card containing his fingerprints.

The City moves to dismiss under Fed. R. Civ. P. 12(b)(1),[4] contending that the court lacks subject matter jurisdiction because subject matter jurisdiction is based on federal question

---

[4]The court has previously denied several motions seeking dismissal of Rhodes's claims against the City.

jurisdiction and only Rhodes's state-law TTCA claim remains against the City.[5]   The City also urges the court to dismiss Rhodes's remaining TTCA claim under 28 U.S.C. § 1367(c), arguing that the claim presents a complex issue of state law and that requiring Rhodes to refile the case in state court would be neither unfair nor inconvenient.

Rhodes opposes the motion.   He asserts that the court has pendent jurisdiction over the state-law claim; that the claim presents neither a novel nor complex issue of state law; that the City's motion is untimely; and that the City waived the right to move for dismissal under Rule 12(b)(1) when it sought to dismiss the state-law claim at an earlier procedural stage.   Rhodes points to the resources already expended during five years of litigation, contending that a dismissal would not serve the ends of judicial economy, fairness, or convenience.

II

The court considers first whether the City's jurisdictional challenge is untimely or has been waived.

"It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).   The court can consider a challenge based on subject matter

---

[5]It is undisputed that the court lacks diversity jurisdiction over Rhodes's remaining state-law claim.

jurisdiction at any point in the litigation.  *See* Rule 12(h)(3).

Moreover, although as the court explains next, it has subject matter jurisdiction over Rhodes's state-law claim despite the dismissal of his federal claims, the City is not precluded from awaiting dismissal of the federal claims before moving for dismissal of Rhodes's remaining state-law claim.  *See, e.g., Guzzino v. Felterman*, 191 F.3d 588, 593-94 (5th Cir. 1999) (noting that plaintiffs had first moved to remand state-law claims after two years of active litigation and following elimination of federal claims from consolidated cases).  Therefore, the City's jurisdictional challenge is neither untimely nor has it been waived.

III

The court considers next whether it lacks subject matter jurisdiction.

Contrary to the City's assertions, the court does not lack subject matter jurisdiction.  When Rhodes filed this lawsuit, he pleaded claims under 42 U.S.C. § 1983 as well as pendent state-law claims.  The court has supplemental jurisdiction over the TTCA claim under 28 U.S.C. § 1367(a) because it is "so related to the original claims that [it] form[s] part of the same case or controversy, or in other words, that [it] 'derive[s] from a common nucleus of operative fact.'"  *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (alterations added) (citing *United Mine Workers of*

*Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

Once supplemental jurisdiction is acquired, the court in its discretion may decline to exercise supplemental jurisdiction. *See Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993).[6]  Under § 1367(c):

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Both parties agree that Rhodes's claims that invoked this court's

_____

[6]One Fifth Circuit case mentions in passing that pendent jurisdiction dismissals are dismissals based on "lack of subject matter jurisdiction." *See Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 586 (5th Cir. 1992) (interpreting *La Porte Constr. Co. v. Bayshore Nat'l Bank,* 805 F.2d 1254, 1257 (5th Cir. 1986)).  This is probably inadvertent.  The *La Porte* panel did not reach this conclusion, and *Parker & Parsley* itself reviewed the district court's dismissal for abuse of discretion before deciding to uphold it.  And recent case law from the Supreme Court and the Fifth Circuit confirms that a court retains subject matter jurisdiction over claims that fall within its supplemental jurisdiction. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, ___ U.S. ___, 129 S. Ct. 1862, 1867 (2009) (holding that when district court remands to state court after declining to exercise supplemental jurisdiction, remand order is not based on lack of subject matter jurisdiction); *Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Parish,* ___ Fed. Appx. ___, 2010 WL 1439277, at *2 (5th Cir. Apr. 12, 2010) (per curiam) ("The subsequent dismissal of all federal claims from Knatt's suit did not divest the district court of supplemental jurisdiction over the remaining state-law claims.").

federal-question jurisdiction have been dismissed. Therefore, the court has the discretion under § 1367(c)(3) to decline to exercise supplemental jurisdiction over Rhodes's remaining TTCA claim.[7]

IV

The court must now decide whether to exercise supplemental jurisdiction.

A

A district court generally dismisses pendent state claims when the federal claims are dismissed. *See Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989); *see also, e.g., Brim v. ExxonMobil Pipeline Co.*, 213 Fed. Appx. 303, 305 (5th Cir. 2007) (per curiam) ("As a general rule, a federal court should decline to exercise jurisdiction over pendent state claims when all federal claims are disposed of prior to trial." (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992)). The Supreme Court disfavors a bright-line approach, however, requiring the court to "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent

---

[7]The court discusses below that Rhodes's TTCA claim presents novel and complex issue of Texas law. *See infra* § IV(B)(4). The court is not invoking § 1367(c)(1), however, as the basis for its decision to decline to exercise supplemental jurisdiction.

state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350 (applying the four factors introduced in *Gibbs*, 383 U.S. at 726-27). No single factor is dispositive. *See Parker & Parsley*, 972 F.2d at 587). "The *Gibbs* test is a flexible one, under which courts should conduct a fact-specific inquiry, considering the totality of circumstances of each case." *Guzzino*, 191 F.3d at 594-95.

B

1

The first factor——judicial economy——requires the court to assess whether resources would be saved if the court maintains jurisdiction over the case.

"[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon,* 484 U.S. at 350 (citing *Gibbs*, 383 U.S. at 726-27). It is not clear, however, what counts as an "early stage" in the litigation. *See Parker & Parsley*, 972 F.2d at 586 (noting that earlier case law had left the phrase undefined). In determining whether the district court abused its discretion, the Fifth Circuit has considered the amount of time elapsed in the litigation, the length of time remaining until trial, and the amount of discovery completed. *Compare Newport Ltd. v. Sears, Roebuck & Co.*, 941 F.2d 302, 307 (5th Cir. 1991) (finding

abuse of discretion where court dismissed case on eve of trial after four years of litigation, thousands of pages of record and discovery, and preparation of pretrial order exceeding 200 pages), *and Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996) (finding abuse of discretion where case was dismissed less than one month before trial after two years of litigation, over 300 pleadings, and extensive discovery taken under federal rules) *with Parker & Parsley*, 972 F.2d at 587 (finding abuse of discretion where case was retained after nine months of litigation and a few weeks remained before trial but the parties were "not ready for trial"), *Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Parish,* ___ Fed. Appx. ___, 2010 WL 1439277, at *3 (5th Cir. Apr. 12, 2010) (per curiam) (finding no abuse of discretion where district court dismissed case based on complexity of state-law issues, even after over 7,000 pages of discovery and 29 depositions), *and Brim*, 213 Fed. Appx. at 306 (affirming dismissal where, at the time of summary judgment, parties were approximately one year into the litigation, two months remained until trial, and, although the parties had completed some discovery, two discovery disputes had not been settled by the court, and parties could use any trial preparation, legal research, and discovery in the state court proceedings).

Today's case falls somewhere in between. It is set for trial in two months, and the case will be five years old by the time of

trial.  In terms of time elapsed, the case resembles *Newport*, but that comparison is somewhat deceptive.  Substantial segments of the five-year period were devoted to interlocutory appeals that in part resulted in eliminating Rhodes's claims against all parties except the City and all claims except his TTCA cause of action.  And the parties appear to have taken relatively little discovery, in contrast to *Newport* and *Doddy*.  A few depositions were taken beginning in late 2008, and there had been no major discovery disputes to resolve.  In these respects, this case more closely resembles *Brim*.

The number of years that the litigation has been pending may be important in many, if not most, cases, but this is probably due to what the length of a case tends to demonstrate.  As the *Knatt* panel explained, "'the amount of judicial resources that the case has consumed' is relevant to our analysis, but that accounting is 'most important . . . as an indication of the familiarity of the forum with the case and its ability to resolve the dispute efficiently.'"  *Knatt*, 2010 WL 1439277, at *3 (quoting *Parker & Parsley*, 972 F.2d at 587).  But in the present case, the duration of the litigation at a macro level is a skewed indicator of the relative competence of the federal courts applying Texas law over Texas courts applying their own law.  This court has devoted substantial judicial resources to resolving federal-law issues that do not translate into familiarity with the contested issues in the

TTCA claim. *Cf. id.* at *3 (upholding dismissal where "the case—whittled to the few remaining state claims—has 'only recently re-started' and 'trial is not imminent'"). As such, this case is distinguishable from *Ingram Corp. v. J. Ray McDermott & Co.*, where the disputed issues relating to the pendent state claims had been "fully litigated" and "extensively briefed" during the court's consideration of related federal claims. *See Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1320 n.28 (5th Cir. 1983).

On the other hand, the parties appear to be ready for trial, unlike the parties in *Parker & Parsley*. Neither party has moved for a continuance. According to a recent joint status report, the parties anticipate that the trial will take only two days. The court already has some familiarity with the state-law issues, having recently ruled on a motion for summary judgment. Were it not for the novel state-law issues implicated in Rhodes's remaining TTCA claim, the court would be better situated than a state court to resolve the case efficiently. The court therefore concludes that the judicial economy factor weighs in favor of retaining jurisdiction.[8]

---

[8]Ultimately, for reasons the court will explain *infra* at § IV(B)(4), the potentially novel or complex state-law issues raised in the TTCA claim counsel against exercising supplemental jurisdiction. Not only would state courts have greater competence than federal courts in addressing the state-law issues, but federalism and comity considerations strongly favor that a state court rule on state matters, especially where the outcome is likely

The second factor the court considers is convenience. In considering this factor, courts have considered whether the geographical location or the refiling of the case would create undue hardship. *See Brim*, 213 Fed. Appx. at 306 (upholding dismissal where majority of witnesses and plaintiffs lived near same state court); *Guzzino*, 191 F.3d at 595 (upholding remand where "the parties' work product could be taken, with little loss, to the state litigation").

Here, the location of the state court should not cause undue hardship. Rhodes resides in Arlington, which is located in Tarrant County, and the events giving rise to the TTCA claim also occurred in Tarrant County.

Nor would filing the case in state court cause undue hardship. Any dismissal or remand will inevitably come with some expense of time and money as parties refile papers and the state court reprocesses them, *see Carnegie-Mellon*, 484 U.S. at 353, but the case does not have to begin again from scratch. Should the case be dismissed, the parties are free to reuse their work product and previously discovered information to prepare for litigation in state court. *See Guzzino*, 191 F.3d at 595. Given the strong comity reasons for dismissal,[9] and the parties' ability to mitigate

to affect an unsettled area of law.

[9]*See infra* § IV(B)(4).

hardship, the convenience factor favors dismissing the TTCA claim.

3

The court considers third the fairness factor. In weighing this factor, courts have considered whether a dismissal would foreclose all relief, *see Carnegie-Mellon*, 484 U.S. at 351-52 (considering whether state statutes of limitations would bar refiling of dismissed claim), whether dismissal or retention would present any danger of duplicative or conflicting rulings, *see Guzzino*, 191 F.3d at 595, or whether dismissal would allow parties to relitigate matters that had already been settled by the federal court, *see Guidry v. Bank of LaPlace*, 954 F.2d 278, 286 (5th Cir. 1992).

None of these concerns is likely present here. Section 1367(d) tolls the period of limitations while a pendent claim is pending in federal court and for a period of 30 days after dismissal. The danger of duplicative or conflicting rulings is low, whether the case remains in this court or is litigated in state court, since there is now only one defendant and one remaining claim. Rhodes expresses concern that the City will "have a second opportunity to assert the same arguments in a state court with a different judge," P. Br. 8, amounting to a second opportunity to test its theories. But given the rulings and

judgment[10] entered in this court or in the Fifth Circuit and the nature of Rhodes's remaining claim against the City, the prospect of expanded litigation in state court appears to be speculative or slight.[11] The court therefore holds that the fairness factor warrants dismissing the remaining TTCA claim.

4

The fourth factor——comity——provides the most compelling reason to dismiss Rhodes's remaining claim. "Once the main action has reached settlement prior to trial, there is generally little that can be gained in the way of judicial efficiency and economy by continuing to adjudicate ancillary state-law claims, and considerations of comity and federalism militate in favor of dismissal." *W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 872 (5th Cir. 1990). The supplemental jurisdiction statute also specifically permits this court to decline to exercise supplemental jurisdiction where "the claim raises a novel or complex issue of state law." 28 U.S.C. § 1367(c)(1).

Rhodes's remaining TTCA claim presents particularly complex and novel issues of Texas law. He accuses the City of negligently

---

[10]The court dismissed the actions against the individual defendants by Rule 54(b) final judgment.

[11]Moreover, as the Fifth Circuit noted in *Parker & Parsley*, not all discovery is admissible, and the fact that a state court may decide the evidentiary issue may even work in favor of dismissal, since "the state court is a 'surer-footed' arbiter of the relevance of pieces of evidence for state law claims." *Parker & Parsley*, 972 F.2d at 588.

allowing its employees to misuse his fingerprint card to launch false criminal accusations against him. Under § 101.021(2) of the TTCA, the City's governmental immunity defense turns on whether one traces the cause of Rhodes's injury to "tangible personal property" (i.e., the fingerprint card itself) or intangible information contained in the property (i.e., the fingerprints). Texas appellate courts have commented on the difficulty of determining what constitutes "tangible personal property." As one court of appeals recently observed:

> Given the plethora of opinions addressing whether a claim involves the use of tangible personal property, and given that a case involving that issue has been pending before the Texas Supreme Court for approximately three years, it is clear that determining whether an injury resulted from the use of tangible personal property, even with existing legal precedent, is not simple or straightforward.

*Univ. of Tex. Health Sci. Ctr. v. Webber-Eells*, ___ S.W.3d ___, 2010 WL 2601664, at *1 (Tex. App. June 30, 2010, no pet. h.) (citing *Franka v. Velasquez*, 216 S.W.3d 409 (Tex. App. 2006, pet. granted)). So far as the court is aware, no Texas appellate court has addressed the question whether to treat fingerprint cards as tangible personal property or as information contained on tangible personal property. Most applications of § 101.021(2) involve cases where the injury is primarily physical. Unless the court accepts Rhodes's interpretation of the TTCA and the jury finds against him on the facts (which would moot the matter), the court will be

required to decide a novel and complex issue of Texas law of a type that has confounded Texas courts.

Rhodes argues that relegating the case to state court would run counter to the interests of comity because this court has already ruled on the state-law claims. Although the court has in fact given some consideration to the merits of the case in response to summary judgment and dismissal motions, it has not reached a final decision on the merits in this remaining claim. Given that the case involves an unsettled area of state law, this court, by retaining jurisdiction and proceeding to a final judgment on the merits, risks reaching the wrong result. *See Parker & Parsley*, 972 F.2d at 588-89 ("The federal courts are courts of limited jurisdiction, and often are not as well equipped for determinations of state law as are state courts."); *see also id.* at 589 ("Federal courts are not the authorized expositors of state law; there is no mechanism by which their errors in such matters can be corrected on appeal by state courts." (citations omitted)). And if this question is to be resolved, comity counsels that it be determined by Texas state courts, not federal courts——no matter how conscientious——attempting to divine Texas law.

5

Having considered the factors together and the totality of the circumstances of this case, the court concludes that it should decline to exercise supplemental jurisdiction over Rhodes's

remaining state-law TTCA claim.

*   *   *

For the foregoing reasons, the court concludes that it has subject matter jurisdiction, but, for the reasons explained, it declines to exercise supplemental jurisdiction over Rhodes's remaining state-law claim under the TTCA. The court therefore grants the City's July 12, 2010 Rule 12(b)(1) motion to dismiss to the extent that it dismisses Rhodes's TTCA claim without prejudice and enters a final judgment today. Rhodes and the City shall each bear his or its respective taxable costs of court.

**SO ORDERED.**

September 8, 2010.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE